UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

RONALD EDWARD JOYNER,

  Plaintiff,

v.            Case No. 3:19cv5002-MCR-HTC

C. MAIORANA, et al.,

  Defendants.

_____/

## ORDER REQUIRING AMENDED COMPLAINT

Plaintiff, Ronald Joyner, proceeding *pro se* and *in forma pauperis*, initiated this case by filing a complaint under 42 U.S.C. § 1983 on December 20, 2019.  ECF Doc. 1.  The matter was referred to the undersigned Magistrate Judge for preliminary screening and report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  Upon review, and for the reasons discussed below, the Court finds that Plaintiff's complaint is not sufficient to be served on the named Defendants.  Because Plaintiff is proceeding *pro se*, the Court will provide Plaintiff an opportunity to clarify his allegations in an amended complaint if he can do so in good faith and in accordance with this Order.  If, after reviewing this Order, Plaintiff

does not believe that he can cure the deficiencies, he should file a notice of voluntary dismissal.[1]

## I.    BACKGROUND

Plaintiff is an inmate of the Florida Department of Corrections ("FDOC"), currently confined at Graceville Correctional Facility ("GCF").[2]  Plaintiff sues four (4) defendants: Warden Maiorana, Assistant Warden of Programs & Disabled Inmates Committee Chair Neal, Grievance Coordinator Bethea, and Classification Supervisor Cooper.  Plaintiff alleges that Defendants are (or were) employees of GEO and that none are employees of the FDOC.  The events at issue took place while Plaintiff was at Blackwater River Correctional Facility.

The crux of Plaintiff's complaint appears to arise out of his placement in confinement, without a disciplinary report, and in retaliation for Plaintiff's inability to hear because he was not given his prescribed hearing aids.  Plaintiff's complaint sets forth the factual allegations that follow, which are accepted as true for purposes

---

[1] Under 28 U.S.C. § 1915, which governs civil actions filed by prisoners *in forma pauperis*, a prisoner who has "on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted," is prohibited from proceeding *in forma pauperis* unless he is under imminent danger or serious physical injury. 28 U.S.C. § 1915.  A voluntary dismissal, however, does not qualify as a "strike" under this 3-strike rule.

[2] Although Joyner states in his complaint that he is incarcerated at Blackwater River Correctional Facility, it appears that he mistakenly identified the institution at which the events complained of took place, rather than his place of current incarceration, on the civil rights form.  ECF Docs. 1 at 13; 2 at 4, 5.

of this review.  Also, as an initial matter, Plaintiff references numerous exhibits in his complaint, but no exhibits were attached to the complaint and, thus, none are before the Court.

On July 26, 2019, while at a "disable inmate committee" meeting, Defendants Neal and Cooper allegedly harassed Joyner, retaliated against him and discriminated against him, which resulted in "the intentional infliction of cruel and unusual punishment."  ECF Doc. 1 at 7.  Defendants Neal and Cooper became angry with Joyner because he could not understand what they said to him due to his "diagnosed and documented" hearing loss.[3]  *Id.*  In retaliation for Plaintiff's "hearing loss and not having hearing aids which he previously had Plaintiff was placed in confinement without any form of procedural preconfinement due process nor while in the punitive conditions of confinement Plaintiff never received a hearing."  *Id.*

Plaintiff claims his "formal grievance Exhibit B 1-2-3" "establishes the liability of Defendant Warden Maiorana" because "he knows that Defendants Neal and Cooper have a long and well established history of abusing, discriminating against, harassing and retaliating against disable[d], elderly impaired, designated ADA Prisoners and the Plaintiff."  *Id.*  Warden Maiorana's "liability" is further established "by his signature on that official DC4-691 state form" and his presence

---

[3] Plaintiff alleges he is disabled, elderly, impaired and hard of hearing.  He also says he has a current diagnosis of "HTN, Asthma, hearing loss and COPD."  ECF Doc. 1 at 8, 10.

"during the ADA meeting when Defendants Neal and Cooper both became verbally abusive to Plaintiff." *Id.* at 9.

Additionally, he claims "Exhibit B further establishes the liability of Defendant Bethea" because he "has personal knowledge that Defendants Cooper and Neal harbor animosity toward ADA prisoners and subject Plaintiff and other ADA to cruel and unusual punishment." *Id.* at 8.

Plaintiff claims "Exhibit C-5" "establishes the liability of the . . . Defendants because no documentation has ever been produced by Defendants to demonstrate Plaintiff ever received an informal hearing before any shift supervisor which is why the Defendant could not and did not initiate any disciplinary action for allegedly being disorderly." *Id.* Neither "Neal nor Cooper alleged nor charged Plaintiff with a 9-17 disorderly conduct infraction which would subject Plaintiff to any form of confinement." *Id.*

Defendants Neal and Cooper's "procedural due process violations are apparent in all Plaintiff's exhibits because neither Defendant Neal nor Cooper issued Plaintiff the required . . . verbal reprimand . . . corrective consultation . . . [or] formal disciplinary action. Reference GEO Black Water 2019 Inmate Handbook, page 11." *Id.* at 8. Defendants Neal and Cooper's "malicious unconstitutional act of retaliation in illegally placing Plaintiff in confinement is further demonstrated in Exhibit C-7 where Neal herself writes that: 'I/M became disrespectful & was removed from

meeting & placed in conf.'" *Id.* Exhibit A-1 "falsely states Plaintiff 'became disorderly', but Exhibit C-7 in Defendant Neal's own writing contradicts A-1, by stating Plaintiff 'became disrespectful,' a totally separate . . . infraction expressed by means of words gestures, and the like."[4] *Id.*

Joyner further alleges "Exhibit C-5 in contradicting Exhibits A-1 and C-7 demonstrates not only a falsified official state document," but "the procedural due process violations in those two (2) exhibits introduce a new theory of why Plaintiff was wrongfully placed in confinement because . . . the same date as the defendant[s] were confused as to whether Plaintiff was disorderly or disrespectful. Exhibit C-5 has Plaintiff being under investigation with no documentation or explanation as to what Plaintiff was allegedly under investigation for." *Id.* at 9. Plaintiff alleges Defendants intentionally enacted an "unconstitutional official custom and policy of discriminating against disable[d], elderly impaired ADA prisoners . . . causing him actual irreversible, permanent injury and then refusing Plaintiff necessary medical care." *Id.* at 9.

Plaintiff alleges Exhibit D "reestablishes":

Maioroana and Neal's liability as to their discrimination, harassment and retaliation against this ADA elderly prisoner and when their cover up unconstitutionally placing Plaintiff in confinement was exposed that Plaintiff was neither disorderly nor disrespectful but that without his ADA hearing aids

---

[4] Joyner identified "Exhibit A-1" as an informal grievance earlier in his statement of facts. ECF Doc. 1 at 7.

> he could not hear either Defendant Maiorana nor Neal and neither were
> concerned about Plaintiff not having his hearing aids.

*Id.* Plaintiff claims the above statements are "demonstrated in Exhibit C-7, as was also attached to Exhibit D, with Defendant Neal stating on the DC4-691, need to check, hearing aids when the issue/problem is; I do not have the hearing aids." ECF Doc. 1 at 10. Exhibit D "demonstrates that because [Plaintiff] was neither disorderly nor disrespectful that to attempt to justify the retaliatory confinement they changed it to [Plaintiff] being under investigation but never stating why." *Id.* Plaintiff states "because this action is against agents and employees of GEO Group Inc., as private contractors acting as state actors then no Florida Department of Corrections state employee is named as a Defendant." *Id.* at 8.

With regard to the confinement, Plaintiff alleges he was "placed in a freezing cold confinement cell which cause[ed] multiple asthma attacks, chest pain COPD difficulty breathing, respiratory distress all exacerbated by the fact that after numerous DC6-236 request[s] the defendant knowingly refused to order defendant's medical staff to give Plaintiff his prescribed asthma medication." *Id.* at 10. It is a GEO Group policy "to take all of a prisoner['s] . . . (Keep on Person) prescribed medication when any prisoner[] or this Plaintiff goes to confinement." *Id.* (language as in original). Plaintiff further suffered "severe chest pain and the resulting high blood pressure, blurred vision and headaches when . . . Plaintiff was denied his high blood pressure medication[s], [Diltiazem and Cardizem]." *Id.* Plaintiff claims:

> Exhibit C-7 reflects that Plaintiff, medically must have a 'double cuff in back' because of plate of titanium to replace a ruptured disc and a broken rotator cuff which because of the freezing cold cell temperatures caused Plaintiff excruciating neck and shoulder pain, stiffness in the shoulder which were painful with ever minimal movement.

*Id.* Additionally, Plaintiff alleges he suffered anxiety, panic attacks, "paranoia of further future harassments and retaliation by defendants resulting in further retaliatory confinement time," and exacerbated "mental anguish" because of "Defendants['s] denial of Plaintiff's ability to communicate with his elderly, 78 year [old] mother dying of lung cancer." *Id.* at 10-11.

As relief, Plaintiff seeks a declaratory judgment; compensatory and punitive damages, attorneys' fees and costs, and an injunction prohibiting future retaliatory conduct and transferring him to a statutorily appropriate ADA facility

## II.   SCREENING UNDER 28 U.S.C. §§ 1915A(a)-(b) and 1915(e)(2)(B)

Because Plaintiff is a prisoner and proceeding *in forma pauperis*, the Court is required to review his complaint, identify cognizable claims and dismiss the complaint, or any portion thereof, if the complaint "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(a)-(b); *see also* 28 U.S.C. § 1915(e)(2)(B) (applying the same standard to *in forma pauperis* proceedings). Dismissals under 28 U.S.C. §§ 1915A(a)-(b) and 1915(e)(2)(B) for failure to state a claim are governed by the same standard as Federal Rule of Civil

Procedure 12(b)(6).  *Mitchell v. Farcass*, 112 F.3d 1483, 1485 (11th Cir. 1997).  In deciding whether to dismiss the Plaintiff's complaint, the Court must read Plaintiff's allegations liberally.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

## III.   LEGAL ANALYSIS

Based on a liberal reading of Plaintiff's complaint, it appears that Plaintiff may be attempting to state a claim for denial of due process under the Fourteenth Amendment relating to his confinement (Count Three), a claim of deliberate indifference under the Eighth Amendment, relating to the conditions of his confinement (Count One), and a claim of retaliation under the First Amendment or discrimination under Title II of the Americans With Disabilities Act ("ADA"), relating to his confinement (Count Two).

### A.   Due Process Claim Arising Out Of Placement in Confinement

The Due Process Clause protects against deprivations of "life, liberty, or property without due process of law."  U.S. Const. amend. XIV.  Plaintiff does not allege facts showing that he has been deprived of life or property when he was placed in confinement.  Thus, he is entitled to due process only if he was deprived of "liberty" within the meaning of the Fourteenth Amendment.   There are two circumstances in which a prisoner can be further deprived of his liberty such that due process is required.  The first is when a change in a prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the

court.  *See Sandin v. Conner,* 515 U.S. 472, 484 (1995); *see, e.g., Vitek v. Jones,* 445 U.S. 480, 492–93 (1980) (holding that a prisoner is entitled to due process prior to being transferred to a mental hospital).  The second is when the state has consistently given a certain benefit to prisoners (for instance, via statute or administrative policy), and the deprivation of that benefit "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin,* 515 U.S. at 484,; *see, e.g., Wolff v. McDonnell,* 418 U.S. 539, 558, (1974) (prisoners may not be deprived of statutory "good-time credits" without due process); *Bass v. Perrin,* 170 F.3d 1312, 1318 (11th Cir. 1999) (finding liberty interest in deprivation of yard time).

Plaintiff alleges he was placed in a freezing cold confinement cell.  The Court cannot reasonably infer from this allegation alone that he was deprived a benefit that imposes an atypical and significant hardship on him.  He has not stated, for example, how long his confinement lasted.  The duration of the confinement is relevant to a determination of whether a disciplinary action has resulted in an atypical and significant hardship, as necessary to impact due process concerns.  *See Sandin*, 515 U.S. at 484; *Sealey v. Giltner*, 197 F.3d 578 (2d Cir. 1999) (holding 101-day confinement in special housing unit did not impair a protected liberty interest); *Rodgers v. Singletary*, 142 F.3d 1252, 1253 (11th Cir. 1998) (holding inmate did not show he "was deprived of a constitutionally protected liberty interest as defined

in *Sandin*" where he did not lose gain time and was held in confinement for approximately 2 months). He also has not stated any facts showing whether he was provided any blankets or what the temperature was in comparison to the temperature of other cells. If Plaintiff wants to proceed with this claim and believes he can do so in good faith, he must amend his complaint to allege facts from which this Court can reasonably infer that his confinement resulted in a deprivation of liberty.

Assuming Plaintiff can state facts sufficient to show his confinement impacted a liberty interest, he must also state facts to show that his due process rights were violated. The minimum requirements of due process for prisoners facing disciplinary action are (1) advance written notice of the charges; (2) a written statement of the reasons for the disciplinary action taken; and (3) the opportunity to call witnesses and present evidence, when consistent with institutional safety and correctional goals. *See Young v. Jones,* 37 F.3d 1457, 1459–60 (11th Cir.1994); *Bass*, 170 F.3d at 1318. Because Plaintiff references exhibits that are not in the record, the Court cannot ascertain whether Plaintiff has set forth facts sufficient to show that the Defendants failed to provide him with these due process requirements (assuming he was entitled to due process). Plaintiff's conclusory allegation that he was denied due process, alone, is insufficient. ECF Doc. 1 at 7. Plaintiff will thus also need to amend his complaint to more clearly set out how his due process rights have been violated with regard to the disciplinary action taken against him.

### B.   Eighth Amendment Claim Arising Out Of Placement In Confinement

The Eighth Amendment's prohibition against cruel and unusual punishment requires prison officials to provide "humane conditions of confinement," ensuring that "inmates receive adequate food, clothing, shelter, and medical care...." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  The Supreme Court has held that an inmate must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment.   "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'" *Id.* at 834 (citations omitted). Second, "a prison official must have a 'sufficiently culpable state of mind'" *Id*.

In assessing a claim of cruel and unusual punishment in violation of the Eighth Amendment, the court must consider the evolving standards of decency that mark the progress of a maturing society. *See Trop v. Dulles*, 356 U.S. 86, 101 (1958).  Cruel and unusual punishment, however, consists only of a level of punishment that involves the unnecessary and wanton infliction of pain.  *See Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *Campbell v. Sikes*, 169 F.3d 1353 (11th Cir. 1999).  Claims challenging conditions of confinement under the Eighth Amendment must demonstrate an infliction of pain "without any penological purpose" or an "unquestioned and serious deprivation of basic human needs" such as medical care, exercise, food, warmth, clothing, shelter, or safety.  *Rhodes v. Chapman*, 452 U.S.

337, 347, (1981); *see also Hamm v. DeKalb County*, 774 F.2d 1567, 1571-72 (11th Cir. 1985), *cert. denied*, 475 U.S. 1096 (1986).

Plaintiff alleges he was placed in a "cold confinement cell" and that the "freezing cold cell temperatures" caused Plaintiff pain.   ECF Doc. 1 at 10.   In assessing whether Plaintiff's exposure to the elements may have risen to the level of a constitutional violation, the Court must consider the totality of the specific circumstances that constituted the conditions of plaintiff's confinement, including the degree to which the temperature actually fell and the duration of the exposure.  *See Wilson v. Seiter*, 501 U.S. 294, 304, (1991); *Palmer v. Johnson*, 193 F.3d 346, 353 (5th Cir. 1999).  "A prisoner's mere discomfort, without more, does not offend the Eighth Amendment."  *Chandler v. Crosby*, 379 F.3d 1278, 1295 (11th Cir. 2004).

Plaintiff, however, does not describe the conditions of his confinement other than that it was "cold" or "freezing."  Thus, the Court does not find from the limited facts alleged that Plaintiff has shown his confinement violated the Eighth Amendment.  *Cf. Palmer v. Johnson*, 193 F.3d 346, 353 (5th Cir. 1999) (inmate's overnight, 17-hour outdoor confinement with no shelter, jacket, blanket, or source of heat as the temperature dropped and the wind blew along with the total lack of bathroom facilities for forty-nine inmates sharing a small bounded area demonstrated a sufficiently serious deprivation); *Dixon v. Godinez*, 114 F.3d 640,

643 (7th Cir. 1997) (observing that "most successful Eighth Amendment claims often involve allegations of cold in conjunction with other serious problems"); *McCray v. Burrell*, 516 F.2d 357, 365-68 (4th Cir.1975) (finding Eighth Amendment violation where inmate was solitarily confined for forty-six hours in a cold cell with no clothing or blankets, no running water or personal hygiene items, and a toilet consisting of an excrement-encrusted hole in the floor).

Even assuming Plaintiff can state facts sufficient to show that the conditions of his confinement violated the Eighth Amendment, he must also meet the second part of a deliberate indifference claim, namely, that the defendant prison officials acted "with a sufficiently culpable state of mind" with regard to the condition at issue. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (citing *Wilson*, 501 U.S. at 298). In defining the deliberate indifference standard, the *Farmer* Court stated:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837. Furthermore, the official may escape liability for known risks "if [he] responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

Although Plaintiff seeks to hold Defendants liable for deliberate indifference, he has not alleged any facts from which the Court can reasonably infer that any of

the named Defendants were aware the cold temperatures were adversely affecting him or that he required asthma medication.  Plaintiff states in conclusory fashion that "defendant knowingly refused to order defendant's medical staff to give prescribed asthma medication," ECF Doc. 1 at 10, but provides no facts as to which Defendant took that action or how that Defendant knew he needed asthma medication.  Indeed, there are no facts to show that any of the Defendants were aware of any facts sufficient to show he was in a substantial risk of harm, that they drew that inference, or that they failed to take reasonable action.

Accordingly, for the reasons set forth above, Plaintiff will need to amend his complaint if he wants to proceed with an Eighth Amendment claim.

### C.    First Amendment Retaliation Claim Arising Out Of Placement In Confinement

"To adequately plead First Amendment retaliation, an inmate must allege he (1) engaged in First Amendment protected conduct and (2) suffered an adverse action that would deter a person of ordinary firmness from engaging in First Amendment protected conduct (3) as a result of having exercised his First Amendment rights." *Nyberg v. Davidson*, 776 F. App'x 578, 581 (11th Cir. 2019). "[T]he gist of a retaliation claim is that a prisoner is penalized for exercising the right of free speech." *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003).

Plaintiff claims Defendants violated his First Amendment rights by retaliating

against him because of his hearing and physical disabilities.  ECF Doc. 1 at 11.

Specifically, Plaintiff alleges Defendants Neal and Cooper "became mad" at him

because his "diagnosed and documented" "hearing loss" prevented him from hearing

what they said to him.  *Id.* at 7.  Plaintiff claims Defendants put him in confinement

because of his hearing loss.  *Id.*

Plaintiff fails to state a claim against Defendants for retaliation because he has

not shown that he was retaliated against on the basis of a protected activity.  For

example, Plaintiff does not allege Defendants retaliated against him for filing a

grievance or initiating litigation.  *Pittman v. Tucker*, 213 Fed. App'x 867, 870-71

(11th Cir. 2007) (denying summary judgment where an inmate alleged prison

officials threatened to harm him if he continued to file grievances); *Wright v.*

*Newsome*, 795 F.2d 964, 968 (11th Cir. 1986) (holding that filing grievances and

initiating lawsuits is protected activity under the First Amendment).   Instead,

Plaintiff alleges Defendants placed him in confinement because his hearing loss

prevented him from understanding what they were saying to him.  ECF Doc. 1 at 7,

11.  Plaintiff's allegations do not reveal that he engaged in any First Amendment

protected conduct, so he has not demonstrated the first element of this claim.

Accordingly, Plaintiff should omit this claim from his amended complaint unless he can state facts sufficient to support each of the elements of a First Amendment Claim, as stated above.

### D.   Discrimination Claim under Title II of the American With Disabilities Act ("ADA")

In various parts of Plaintiff's complaint he alleges Defendants have discriminated against him by taking disciplinary action against him and harassing him for not being able to hear them.  Specifically, he alleges that he was placed in confinement because he could not hear Defendants.  To the extent Plaintiff is seeking relief against Defendants for violating Title II of the ADA, he cannot do so based on the facts alleged because Defendants are employees of the GEO Group, which is a private entity that is not subject to suit under Title II and, also, there is no individual liability under Title II.

Title II of the ADA provides in pertinent part: no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the Services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.  42 U.S.C. § 12132.  To state a claim under Title II of the ADA, a plaintiff must allege: (1) that he is a qualified individual with a disability; (2) that he was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity or otherwise discriminated against by such entity; (3) by reason of such disability. *Shotz v. Cates*, 256 F.3d

1077, 1079 (11th Cir. 2001).  The ADA applies to state prisoners.  *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 212 (1998).

Plaintiff cannot recover against the Defendants in their official capacities because they work for GEO Group, Inc. ("GEO"), a private prison management corporation that is not subject to liability under the ADA.  *See Edison v. Douberly*, 604 F.3d 1307, 1308, 1310 (11th Cir. 2010) (affirming summary judgment in favor of individual employees of GEO sued in their official capacities for violating the ADA  because "GEO is not a public entity subject[] to liability under Title II of the ADA").

Plaintiff also cannot assert a discrimination claim under Title II against the Defendants in their individual capacities because no such liability exists under Title II.  *See Badillo v. Thorpe,* 158 F. App'x 208, 211 (11th Cir. 2005) ("there is no individual capacity liability under Title II of the ADA"); *Mason v. Stallings*, 82 F.3d 1007, 1009 (11th Cir. 1996) (same).  This is true even if Plaintiff seeks to hold Defendants individually liable under § 1983 for a discrimination claim under the ADA.  *See Badillo*, 158 F. App'x at 213 ("a plaintiff cannot maintain a section 1983 action in lieu of – or in addition to – a Rehabilitation Act or ADA cause of action if the only alleged deprivation is the [plaintiff's] rights created by the Rehabilitation Act and the ADA").

Accordingly, Plaintiff should omit from his amended complaint a claim for discrimination under Title II of the ADA against Defendants.

**E.    Plaintiff Is Not Entitled To Declaratory Judgment Or Injunctive Relief**

As part of the relief requested, Plaintiff seeks a declaratory judgment and injunctive relief.  However, he is not entitled to either as a matter of law.  (By only addressing these two requests for relief, the Court is not making any determinations about the viability of Plaintiff's entitlement to the monetary relief requested).

1.    Plaintiff's claim for a declaratory judgment

Plaintiff seeks a "declaratory judgment that all named Defendants acted with deliberate indifference to Plaintiff's hearing and physical disabilities and subjected Plaintiff to retaliatory acts of cruel and unusual punishments by denying Plaintiff his due process protections."  ECF Doc. 1 at 11.  Plaintiff, however, is not entitled to this relief because a declaratory judgment is not available for past conduct.  *See Hitchcock v. USAA Cas. Ins. Co.*, No. 618CV1986ORL28EJK, 2020 WL 364600, at *2 (M.D. Fla. Jan. 22, 2020); *Regency of Palm Beach, Inc. v. QBE Ins. Corp.*, No. 08-81442-CIV, 2009 WL 2729954, at *4 (S.D. Fla. Aug. 25, 2009) ("The point of a declaratory judgment is to permit 'actual controversies to be settled before they ripen into violations of law,' not to adjudicate past conduct." (quoting *Great Lakes Reinsurance (UK) PLC v. TLU Limited*, 07-61259-Civ, 2008 WL 828122 (S.D. Fla. Mar. 27, 2008)).

Therefore, Plaintiff should omit this request for relief from his amended complaint.

2. <u>Plaintiff's claim for an injunction.</u>

Plaintiff also seeks to be transferred to a "statutorily appropriate ADA facility." ECF Doc. 1 at 12. As an initial matter, whether Joyner should be transferred to a different facility is a decision that lies squarely under the purview of prison administration, and this Court should be hesitant to interfere with the administrative processes of a prison. *See e.g., Brown v. Anglin*, 2016 WL 6803133, at *2 (N.D. Fla. June 27, 2016), *report and recommendation adopted sub nom. Brown v. Holland*, 2016 WL 6780319 (N.D. Fla. Nov. 15, 2016) ("granting the injunction would require the federal courts to interfere in the administration of the jail and take over the management or treatment of a single inmate"). Additionally, prisoners simply do not have a constitutional right to remain in or be transferred to a correctional institution of their own choosing. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976).

Moreover, Plaintiff is not entitled to injunctive relief here because he has not stated a claim under the ADA.

## IV. CONCLUSION

Plaintiff should carefully review the foregoing to determine what claims he is able to bring. If Plaintiff does not have a good-faith belief he can state a facially

plausible claim, he should file a notice of voluntary dismissal.  If Plaintiff chooses to proceed with this action, he must completely fill out a new civil rights complaint form, marking it "**First Amended Complaint**."   Plaintiff must place any Defendants' names in the style of the case on the first page of the complaint form and include their addresses and employment positions in the "Parties" section of the form.  **In the statement of facts, Plaintiff should clearly describe how each named defendant is involved in each alleged constitutional violation, alleging the claims as to each defendant in separately numbered paragraphs and including specific dates and times of the alleged unconstitutional acts**.

If Plaintiff cannot state exactly how a defendant harmed him, he should delete or drop that person as a defendant from his complaint.  In the section entitled "Statement of Claims," Plaintiff must state what rights under the Constitution or laws of the United States have been violated, and he must provide support in the statement of facts for the claimed violations with specificity.  The first amended complaint must contain all of Plaintiff's allegations, and Plaintiff should not rely upon any allegation in a previous complaint.  N.D. Fla. Loc. R. 15.1.

Also, as stated above, Plaintiff's complaint was not accompanied with any exhibits, despite multiple references to exhibits.  If Plaintiff wants the Court to consider those exhibits and wants them to be a part of his amended complaint, he will need to ensure that they are filed with the amended complaint.

Accordingly, it is ORDERED:

1.      Plaintiff is required to file an amended complaint within **thirty (30)**

**days** of the date of this order, or if he cannot do so in good faith, then Plaintiff should

consider filing a notice of voluntary dismissal.

2.      Plaintiff's failure to timely comply with this order may result in a

recommendation that this case be dismissed for failure to prosecute and comply with

an order of the Court.

DONE AND ORDERED this 10th day of March, 2020.

/s/ Hope Thai Cannon

**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**